LOUISE PATTEN *v*. STANDARD OIL CO. OF LOUISIANA AND A. N. HAYNES.*

(*Nashville,* December Term, 1932)

Opinion filed January 7, 1933.

---

*As to what constitutes fraudulent concealment, see 12 R. C. L., 306; R. C. L. Perm. Supp., p. 3109; R. C. L. Pocket Part, title "Fraud," section 67.

On running of statute as not prevented by ignorance of rights, see 17 R. C. L., 831, 832; R. C. L. Perm. Supp., p. 4356; R. C. L. Pocket Part, title "Limitation of Actions," Sec. 193

As to character and object of statute of limitations, see 17 R. C. L., 664, 665; R. C. L. Perm. Supp., p. 4334; R. C. L. Pocket Part, title "Limitation of Actions," Sec. 3.

WILLIAMS & FRIERSON, THOMAS, COFFEY & FOLTS, EDWARD FINLAY, and W. F. CHAMLEE, for plaintiff in error.

LYNCH, BACHMAN, PHILLIPS & LYNCH, for defendant in error.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

Plaintiff sues to recover damages for the wrongful death of her husband. The action was begun more than two years after his death. To avoid the one-year statute of limitations, plaintiff avers that the defendants fraudulently concealed her cause of action.

The trial court sustained a demurrer to the declaration and dismissed the suit. Plaintiff has appealed.

The essential part of the declaration is as follows:

"On the morning of February 24, 1930, plaintiff's husband, having been summoned to the bedside of plaintiff, who had been injured in an automobile accident in Florida, took passage in an airplane belonging to the Southern Flyers, Inc., and operated by an experienced and skillful pilot and started from Chattanooga to Florida. To equip the plane with gasoline, an order was given to the defendant company and the required quantity was, under the direction of defendant Haynes, and with full knowledge that it was to be used in an airplane, sent from said company's place of business in said county to the flying field in the same county from which the start was to be made and there put into the plane. At the start, there was no indication that anything was wrong. The plane was in perfect condition and started on its journey with no evidence of anything from which danger could be apprehended unless the fog then existing should become too dense for safety. But at a point near Marietta in the State of Georgia, the plane gave evidence of not properly responding to the operations of the pilot, and, before a landing could be made, fell suddenly to the ground, so seriously injuring plaintiff's said husband that he died without regaining consciousness.

"The cause of the fall, until quite recently unknown to the plaintiff, was that the gasoline furnished by defendants was of such an inferior quality and contained such a quantity of water or other foreign substance, that it caused a sudden cessation of the motive power and the consequent dropping to the ground of the plane.

"Plaintiff did not know that there was anything wrong with the gasoline. It had been furnished by defendant

company expressly for use in an airplane. That company enjoyed such a high reputation for reliability and for furnishing only the gasoline best suited for any desired use, that there was no circumstances which could give rise even to a reasonable suspicion as to the quality or condition of the gasoline or as should have put plaintiff on inquiry in that regard.

"But the defendants well knew the facts above stated, and were so fully aware that the fatal accident was just what they ought to have anticipated that as soon as they learned of the accident, realizing their culpability, they took immediate and effective steps to conceal the facts and prevent their becoming known. Several of the defendant company's employes knew the facts as above alleged, but these facts were not known outside of said company's organization, and information as to them could not be obtained except from these employes. Defendants enjoined silence upon these employes and gave them to understand that their jobs depended upon their keeping their mouths shut. Defendants thus fraudulently concealed the facts which made them liable for the death of plaintiff's husband by deliberately closing against plaintiff the only source from which information could be obtained. And so successful were the steps taken that the facts stated above did not come to the knowledge of plaintiff or her representatives, nor did they learn anything which could be the basis of suspicion that there was anything wrong with the gasoline for more than a year after her husband's death and, in fact, until within two months before the commencement of this suit. These facts were then learned through one of the employes who had become no longer willing to conceal them. This disclosure came as a complete surprise to

the plaintiff. Her representative had made as thorough an investigation as could be made, without the facts which defendants were fraudulently concealing, and nothing was discovered which tended to connect defendants with the cause of the accident, or put plaintiff on the inquiry as to the quality of the gasoline, and even if there had been any ground for suspicion the defendants had made -it impossible to discover the facts by silencing all persons who knew them. The failure to discover these facts within one year was not due to any negligence on the part of the plaintiff, but was wholly due to the fact that defendants so fraudulently and effectively kept them concealed that there was no ground for suspicion.

"The proximate cause of the accident and the death of plaintiff's husband was the act of defendants not only negligently, carelessly and recklessly, but knowingly and wilfully furnishing unfit and dangerous gasoline, which fact they fraudulently concealed for more than a year after the accident."

Plaintiff does not charge that her husband purchased this inferior gasoline from defendant, or that he purchased it from Southern Flyers, Incorporated, and there is nothing in the declaration indicating that plaintiff knew that this gasoline was purchased from defendant until she was so informed by a former employe two years after the accident. In view of these omissions, we think it is inferable that deceased was a passenger in an airplane of the Southern Flyers, Incorporated, which was propelled by gasoline that it had purchased from defendant. In other words, it is not averred in the declaration that any contractual or confidential relations existed between deceased and defendant which would require a disclosure of the transaction.

Preliminarily, it may be stated that the authorities are in conflict as to whether fraudulent concealment can be invoked in an action at law. 37 Corpus Juris, p. 973, and notes.

The equitable doctrine of fraudulent concealment is based upon the principle of fair dealing. Where there is no dealing between the parties there can be no concealment. And even where the parties have had business transactions it is universally held that mere silence does not constitute fraudulent concealment. We have been unable to find any case like the one under consideration where the rule contended for was applied.

In 12 Ruling Case Law, p. 306, it is said: "As a general rule to constitute fraud by concealment or suppression of the truth there must be something more than mere silence, or a mere failure to disclose known facts. There must be a concealment, and the silence must amount to fraud. Concealment in this sense may consist in withholding information asked for, or in making use of some device to mislead, thus involving act and intention. The term generally infers also that the person is in some way called upon to make a disclosure. It may be said, therefore, that, in addition to a failure to disclose known facts, there must be some trick or contrivance intended to exclude suspicion and prevent inquiry, or else that there must be a legal or equitable duty resting on the party knowing such facts to disclose them."

In the instant case it is not averred that deceased had any transactions with defendant; it is not alleged that information was asked for by plaintiff and withheld by defendant; or that defendant used some device to mislead plaintiff; or that a relationship existed that

made it mandatory on defendant to make a disclosure; or that defendant by trick or contrivance attempted to exclude suspicion; or that defendant did some act calculated to prevent plaintiff from making inquiry.

In the same book from which we quoted above, and on the next page, it is said: "But, while one cannot properly withhold the truth from those who have reason to expect information from him, those who do not look to him for information and expect no disclosure from him, cannot properly complain of his silence or successfully contend that he has suppressed the truth. Hence, in order that suppression of the truth may constitute fraud, there must be a suppression of facts which one party is under a legal or equitable obligation to communicate to the other, and which the other party is entitled to have communicated to him. In other words, the facts concealed must be such as, in fair dealing, the one party has a right to expect to be disclosed, and such as the other party is bound to disclose. If, then, there is a legal obligation to speak, a failure to speak amounts to a suppression of the fact which should have been disclosed; and such failure is a fraud, but where there is no obligation to speak, silence cannot be termed suppression, and is not a fraud."

Clearly complainant has not alleged facts in her declaration that would bring her within the foregoing text.

If defendant was under no obligation to make a disclosure, then the admonition to its employes to keep silent would not alter its status. A case very much in point, in fact a much stronger case for the reason that the suit was based upon a business transaction between the parties, is *Smith* v. *Bishop* (Vt.), 31 Am. Dec., 607,

611. In that case Bishop induced Smith to join him in the purchase of a patent-right, alleging that it could be bought for $900, knowing at the time that it could be had for $200. Smith paid the $450 to Bishop, who purchased the patent from Dennett for $200. Smith, upon learning of the fraud, brought suit against Bishop. The latter pleaded the statute of limitations. The plaintiff replied, that when the defendant purchased from Dennett, he instructed Dennett not to tell the plaintiff what he had paid for the right; and in consequence of this collusive agreement the fraud was not discovered, etc. With respect to the instruction which Bishop gave Dennett, the court said:

"In the first place, a mere request of secrecy to a third person, sustaining to the transaction the mere relation of a witness, has never, as we believe, been regarded as an actionable fraud. Nor can we so regard it here, inasmuch as no application appears to have been made to the witness, to disclose the facts of the transaction, nor does any misrepresentation appear to have been made to the party in relation to them."

If, in the case under consideration, deceased had purchased the gas from defendant, and after his death plaintiff had interrogated the employes about the transaction, and acting upon the instruction they received from defendant had suppressed the facts, the case would be entirely different.

While the plaintiff alleges that she was diligent in making investigation as to the cause of the accident, that is a mere conclusion not supported by any statement of facts. Prompt and efficient investigation might have revealed the cause of the accident. After such a long lapse of time the plaintiff should have set forth

in detail the entire transaction, the relationship of the parties, and the efforts that were made to ascertain what caused the plane to fall.

The statute of limitations is looked upon with favor as a statute of repose. *Wood* v. *Carpenter,* 101 U. S. 135, 25 L. Ed., 807; *Cocke* v. *Hoffman,* 72 Tenn., 105; *Coleson* v. *Blanton,* 4 Tenn., 152; *Shelby's Heirs* v. *Shelby,* 3 Tenn., 179.

We conclude, therefore, that the declaration does not state a case in which, under the doctrine of fraudulent concealment, the statute of limitations should be postponed, and affirm the judgment of the trial court.