# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
September 18, 2001 Session

## MITCHELL THOMAS ANDERSON, ET UX. v. DR. KEN WARREN, ET UX.

**A Direct Appeal from the Circuit Court for Gibson County**
**No. 7371    The Honorable George Ellis, Judge**

---

### No. W2000-02649-COA-R3-CV - Filed December 12, 2001

---

Buyers of home sued sellers for damages resulting from numerous defects in home not disclosed to buyers and in direct contradiction of the representations made about the property. The trial court found sellers had fraudulently misrepresented the condition of the property and awarded damages. Sellers appeal. We affirm.

### Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

David W. Camp, Jackson, For Appellants, The Warrens

L. L. Harrell, Jr., Trenton, For Appellees, The Andersons

### OPINION

Plaintiffs, Mitchell Thomas Anderson and Dora Myles Anderson ("Buyers") filed their complaint on September 4, 1996 against defendants, Dr. Ken Warren and Beverly Warren ("Sellers"), seeking damages for defects in the home they purchased from defendants. The complaint alleges that defendants fraudulently misrepresented the condition of the premises in several particulars. Defendants' answer denies any misrepresentations.

On September 8, 1995, the sale by the Warrens of 7073 Oak Hill Drive, Milan, Tennessee, to the Andersons was closed pursuant to a contract dated June 23, 1995 for a purchase price of $235,000.00. Prior to entering into the contract to purchase the residence, the Andersons were provided with a "Home Features" brochure describing the residence. The brochure described the residence as "[a]ll brick maintenance free . . . ." and having a "commercial vent hood", a "pool" and a "covered patio with a built-in gas grill." The Andersons visited the residence and inquired with one of the real estate agents about the residence.

After the Andersons signed the contract to purchase the residence, they were provided with a two page document entitled "Tennessee Residential Property Condition Disclosure" (hereinafter "Disclosure form"), dated July 7, 1995, and signed by the Warrens. The Disclosure form asks if the Warrens were aware of any significant defects/malfunctions in the "interior walls", "ceilings", "exterior walls" or "roof", in addition to other areas of the residence and the Warrens checked "NO" to all of these questions. Furthermore, another section of the Disclosure form asks if the Warrens were aware of any "[f]looding, drainage, or grading problems" and the Warrens checked "NO" to this question. In addition to the Andersons participating in a "walk-through" of the residence with the Warrens on the morning of September 8, 1995, the day of closing, the record indicates that the Andersons relied on both the "Home Features" brochure and the Disclosure form when making their decision to purchase the residence from the Warrens.

According to the testimony in the record, approximately one month after the Andersons closed and moved into the residence, they began to have problems with water leaking in several rooms including their daughter's bedroom, the master bedroom, the master bedroom closet, the master bathroom, the garage area and the recreation room. The Andersons then investigated the roof as a source of the water leaks and as Mr. Anderson walked on the roof over the master bedroom and garage area, the roof sank. The Andersons found that several areas of the roof and roof-line had been patched. The Andersons also found a trap door leading up to an area under the roof where they found plastic nailed into the wall to capture water coming in from the sheet rock. Thereafter, the Andersons noticed that there was a significant loss of water in the swimming pool. They found that the built-in gas grill did not work properly because smoke would enter the house and that the vent-a-hood in the kitchen did not work because it had been disconnected and the outside exhaust had been covered by the vinyl siding and insulation. Also, a water pipe located in the kitchen behind the double oven froze and burst and, after the Andersons investigated, they found a heating pad wrapped around the water pipe. They also experienced some flooding problems around the residence near the family room.

The Andersons sued the Warrens on September 4, 1996. Their complaint sought money damages in the amount of $150,000 and alleged that the home was represented by the Warrens to be of good and merchantable quality and that the Warrens had executed a Tennessee Residential Property Condition Disclosure form showing that there were no defects in the improvements on the property, when in fact, the Warrens knew this information was false. Furthermore, the complaint alleged that the Warrens fraudulently misrepresented the property and intentionally concealed the problems and defects of the residence and swimming pool.

The Warrens filed an answer on October 30, 1996, denying all allegations of intentional or fraudulent misconduct. The matter was tried without a jury, and by order entered September 26, 2000, the trial court found for the Andersons and awarded them $86,343.43, plus costs. The Warrens appeal and present the following two (2) issues for review as stated in their brief:

> (1) Did the trial court err when it found the Appellants had fraudulently misrepresented and intentionally concealed alleged defects in the real estate purchase by the Andersons;

(2) Did the trial court err when it awarded damages equal to the total amount of repair bills introduced during trial.

The Andersons also present two issues for review:

(1) Did the trial court err in not awarding to the appellees damages representing the appreciated value of the property as a result of the defects in same;

(2) Did the trial court err in not awarding to the appellees a reasonable sum to cover reimbursement expenses previously incurred by them for repairs upon said house and for time spent by the appellees in personally attempting to repair said house primarily consisting of trying to stop said leaks and to compensate the appellees for their loss of use and enjoyment of said residence.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d). *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). When the resolution of the issues depends upon the truthfulness of witnesses the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Id*.; *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

We will now address the Warrens' first issue. The Warrens claim that the trial court erred when it found that they had fraudulently misrepresented and intentionally concealed alleged defects in the real estate purchased by the Andersons. The Warrens assert that the Andersons should have inspected the residence in question. The Warrens also rely on the provisions of two (2) documents executed by the Andersons. The first document the Warrens rely upon is the sales contract dated June 23, 1995, and signed by the Andersons providing that "[p]urchaser understands that he must make an inspection of the premises prior to closing and all warranties and representations contained herein shall become null and void after closing of said property." The second document the Warrens rely upon is the "Property Acceptance Form" executed on the day of closing, September 8, 1995, that the Warrens and their agents had the Andersons sign stating in part that "[t]he closing of this sale shall constitute an acknowledgment by the Buyer that the premises and all systems are acceptable. The Seller or their agents have no further liability after closing." Furthermore, the Warrens claim that there is no direct evidence at trial which can support fraudulent misrepresentation or intentional concealment. We disagree.

In Tennessee, an action for fraudulent misrepresentation exists when the plaintiffs can show:

> (1) that the defendants made a representation of fact; (2) that the representation was false; (3) the representation related to a material fact; (4) the representation was made either knowingly, recklessly, or without belief in its truth; (5) that plaintiffs acted reasonably in relying on the representation; and (6) that plaintiffs suffered damages as a result of the representation.

*City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 738 (Tenn. Ct. App. 1996)(citing *Metro Gov't. of Nashville & Davidson County v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992)).  As a general rule, a party may be held liable for damages caused by his failure to disclose material facts to the same extent that a party may be liable for damages caused by fraudulent or negligent misrepresentation.  *Gray v. Boyle Inv. Co.*, 803 S.W.2d 678, 683 (Tenn. Ct. App. 1990)(citing *Macon County Livestock v. Kentucky State Bank*, 724 S.W.2d 343 (Tenn. Ct. App. 1986)).  In *Patten v. Standard Oil Co. of Louisiana*, 55 S.W.2d 759 (Tenn. 1933), our Supreme Court said:

> As a general rule to constitute fraud by concealment or suppression of the truth there must be something more than mere silence, or a mere failure to disclose known facts.  There must be a concealment, and the silence must amount to fraud.  Concealment in this sense may consist in withholding information asked for, or in making use of some device to mislead, thus involving act and intention.  The term generally infers also that the person is in some way called upon to make a disclosure.  It may be said, therefore, that, in addition to a failure to disclose known facts, there must be some trick or contrivance intended to exclude suspicion and prevent inquiry, or else that there must be a legal or equitable duty resting on the party knowing such facts to disclose them.

*Id.* at 761 (quoting 12 Ruling Case Law, at 306).

Dr. Warren testified that he knew about the numerous roof leaks in the residence that had existed since before the house was completed in 1981, and the roof leaks did not cease until one or two years prior to the Warrens moving out of the residence in September 1994.  Dr. Warren acknowledged that he was responsible for constructing the trap door and installing the plastic diversion to keep the water away from the interior wall.  Dr. Warren also testified that the exterior brick would have to be sealed every three years in order to prevent further leaking.  However, both Dr. Warren and Mr. Anderson testified that at no time did Dr. Warren ever tell the Andersons about any leaks in the residence or that the exterior brick would have to be sealed every three years.  Furthermore, the "Home Features" brochure on the residence used by the Warrens provided that it was all brick and maintenance free and the Warrens failed to disclose any of the leaking problems on the Disclosure form executed prior to closing.  Although Dr. Warren testified that he had no part in the preparation of the "Home Features" brochure, he is responsible for its contents.  *See Hunt v. Walker*, 483 S.W.2d 732 (Tenn. Ct. App. 1971).  In *Hunt*, the Court said:

> Real estate seekers cannot be beguiled into purchases by the material misrepresentations of sales agents and told by owners upon making complaint that they, the owners, were not responsible for the loud and boastful assertions made by the agents during the stimulating of the purchasing desires of the customer. It is safer to hold vendors liable for the false or untrue representations of matters of fact made by brokers during negotiations. The rule laid down still leaves room in which these promoters of sales may puff and express extravagant opinions.

*Id.* at 737 (quoting **Hampton v. Hancock**, 4 Tenn. C.C.A. (Higgins) 419 (1913)).

Dr. Warren also testified that he experienced an abnormal loss of water in the swimming pool soon after it was installed, and he sealed the main drain with concrete rendering the main drain useless. Dr. Warren testified that he discussed with the Andersons the valves in the pump house of the pool and how they operated, but he is not certain that he told the Andersons that the bottom drain had been sealed because it leaked water. Mr. Anderson testified that they were never told that the swimming pool had a leaking problem and that the main drain had been blocked.

Dr. Warren testified that he knew that the gas grill did not work properly when used in the alcove because the vent fan that Dr. Warren installed did not suction the smoke well enough. However, the brochure used to sell the Warrens' residence features a "built-in gas grill". Dr. Warren further testified that he unhooked the vent-a-hood in the kitchen because of a cold draft entering the home through that area. Dr. Warren also had the vent-a-hood exhaust covered when they had insulation and vinyl siding placed over the exterior of the residence. However, the brochure used to sell the residence features a "commercial vent hood".

Dr. Warren acknowledged that the water pipes located in the kitchen behind the double oven froze and burst once in 1981 or 1982 because it did not have enough insulation and that he placed a heating pad around the pipe in case he ever had a similar problem again. However, Mr. Anderson testified that at no time did Dr. Warren ever inform them about the possibility of freezing pipes and the Warrens did not indicate that there were any problems with the plumbing or insulation on the Disclosure form.

Dr. Warren further testified that in the mid 1980s there was a downpour of rain which flooded and caused water to come up to the edge of the residence and inside the garage area. Dr. Warren testified that he later took out flood insurance, but was not required to carry the insurance. However, the Warrens failed to mention anything about flooding to the Andersons and, in fact, stated that there were no flooding problems with the residence on the Disclosure form that the Andersons relied upon.

Based on the undisputed facts above, we find that the evidence does not preponderate against the trial court's finding that the Warrens fraudulently misrepresented and intentionally concealed defects and problems with the residence. The record reflects that the Andersons' actions, including

the execution of the two above-described documents in connection with this transaction, were induced by the misrepresentations of the Warrens detailed herein, and, therefore, the Andersons made no voluntary relinquishment of their rights. In *Edmondson v. Coates*, this Court, considering a somewhat analogous transaction, said:

> [E]ach party to a contract is bound to disclose to the other party all he may know respecting the subject matter materially affecting a correct view of it, unless common observation would have furnished the information.

*Edmondson v. Coates*, No. 01-A-01-9109-CH000324, 1992 WL 108717, at *11 (Tenn. Ct. App. May 22, 1992)(quoting *Simmons v. Evans*, 206 S.W.2d 295, 296 (Tenn. 1947)).

In the Warrens' second issue, they contest the damage award.

The general rule for the measure of damages for injuries to real estate is the difference between the reasonable market value of the premises immediately prior to and immediately after the injury; but if the reasonable cost of repairing the injury is less than the depreciation in value, the cost of repair is a lawful measure of damages. *Williams v. Southern Ry.*, 396 S.W.2d 98 (Tenn. Ct. App. 1965). In arriving at the difference in value immediately before and after the injury to the premises, the trier of fact can take into consideration the cost of restoring the property to its former condition. *McKinnon v. Michaud*, 260 S.W.2d 721 (Tenn. Ct. App. 1953).

The basic rule prescribing the measure of damages for misrepresentation is the benefit of the bargain rule which compensates the injured party for the actual injuries sustained by placing him or her in the same position that he or she would have occupied had the misrepresentation not occurred. *Youngblood v. Wall*, 815 S.W.2d 512, 518 (Tenn. 1991). This measure of damages allows the plaintiff to recover the difference between the actual value of the property received at the time of the making of the contract and the value that the property would have possessed if the representations had been true. *Haynes v. Cumberland Builders, Inc*., 546 S.W.2d 228, 233 (Tenn. Ct. App. 1977). In a fraudulent misrepresentation case the plaintiffs can also recover for any other pecuniary losses proximately caused by the misrepresentation. *Id*.

The Warrens claim that the damages awarded by the trial court were far in excess of what should have been awarded because the Andersons' proof of damages was ambiguous, vague and did not accurately reflect damages directly related to any alleged misrepresentation or concealment exercised by the Warrens in this cause. Specifically, the Warrens assert that the estimate to repair the water damage, totaling $27,386.43, was "extremely high" according to the Warrens' witness, Mr. Jimmy Anderson, a licensed architect. Furthermore, the Warrens assert that the estimate to repair the pool, totaling $15,500, included $10,500 of routine maintenance, according to the Andersons' witness, Mr. Brian Childers. However, Mr. Childers also testified that in order to repair the cracks, there is no way to keep from having to refinish the bottom of the pool and that the only "routine maintenance" would be the caulking and the finish from time to time. The Warrens also dispute the estimate to install the metal roof on the residence, totaling $35,957.00, based on the testimony of their witness, Mr. Jimmy Anderson. According to Mr. Jimmy Anderson, the total roofing area was

3600 square feet, which is 800 square feet less than what Mr. Ralph Gordon Jones, Jr., the Andersons' witness, based his estimate upon. The Warrens also contend that the trial court erred in awarding the Andersons the $7,500.00 which represented the total amount that the Andersons expended in trying to repair the residence. The Warrens argue that there was no evidence at trial as to this amount. We disagree and this issue is without merit.

The trial judge, who has the opportunity to observe all of the witnesses at trial, is given wide discretion by this Court in deciding witness credibility. The trial judge in this case accredited the testimony of the Andersons and their witnesses, including the repair estimates provided by those witnesses and found that the diminution in value of the residence considering all of the problems would be $80,000, in addition to the $7,500.00 that the Andersons spent in trying to repair the problems with the residence. The trial court also found that the cost to repair the residence, including the $7,500.00 mentioned above, would be $86,343.43. The evidence does not preponderate against this finding.

We will now address the Andersons' issues.

We interpret the Andersons' first issue as asking this Court to award damages for both the cost of repairs and for the depreciation of the house after all of the repairs have been made. The Andersons argue that the residence in question now has a "reputation" for being defective. Once the repairs are made to the residence in question, the residence should no longer have a reputation for being defective. The testimony concerning the estimates of repair contemplated that the repairs would place the property in the condition as represented by the Warrens. Therefore, we find that the Andersons' first issue is without merit.

The Andersons' second issue asks this Court to award damages above what the trial court awarded for out of pocket expenses because they have been denied the right to enjoy their residence. However, contrary to the Andersons' argument, there is no question of nuisance in this case. Mr. Anderson testified that he spent $7,500.00 in an attempt to correct problems with the residence and the trial court included that $7,500.00 in its calculation of damages. As stated above, we find that the trial court determined the proper award of damages and therefore, the Andersons' second issue is without merit.

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellants, Dr. Ken Warren and Beverly Warren, and their surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.