RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0226p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

SALTIRE INDUSTRIAL, INC., f/k/a SCOVILL, INC., a
Chapter 11 Bankruptcy Debtor, and ALPER
HOLDINGS U.S.A., INC.,

                *Plaintiffs-Appellants,*

     *v.*

WALLER, LANSDEN, DORTCH & DAVIS, PLLC,

                 *Defendant-Appellee.*

No. 06-5949

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 05-00772—Aleta A. Trauger, District Judge.

Argued: April 25, 2007

Decided and Filed: June 19, 2007

Before: SILER and GILMAN, Circuit Judges; ZATKOFF, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Alan Mark Turk, Brentwood, Tennessee, for Appellants. Robert J. Walker, WALKER, TIPPS & MALONE, Nashville, Tennessee, for Appellee. **ON BRIEF:** Alan Mark Turk, Brentwood, Tennessee, for Appellants. Robert J. Walker, John L. Farringer IV, WALKER, TIPPS & MALONE, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

    RONALD LEE GILMAN, Circuit Judge. Saltire Industrial, Inc., formerly known as Scovill, Inc., and its parent company Alper Holdings U.S.A., Inc. (collectively, Saltire), sued the Nashville law firm of Waller, Lansden, Dortch & Davis, PLLC (Waller Lansden) for common law fraud. The claim arose out of an earlier toxic-tort action in which Waller Lansden represented a group of Tennessee plaintiffs against Saltire in state court. Saltire alleged that Waller Lansden's "secret agreement" with an in-state codefendant wrongfully prevented Saltire from removing the case to federal court on the basis of diversity of citizenship. The district court granted Waller Lansden's

_____

[*] The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

In 1994, Waller Lansden filed suit in the Circuit Court of Tennessee against Saltire on behalf of several residents living near Saltire's manufacturing facility in Dickson, Tennessee. The lawsuit, captioned *Norman v. Scovill, Inc*. (the *Norman* case), involved state-law claims for trespass, nuisance, and battery based upon Saltire's alleged improper handling of trichloroethylene (TCE) that contaminated the surrounding soil and groundwater. As a result of this contamination, the plaintiffs alleged that the amount of TCE in the wells used for drinking water was toxic and caused them a number of health problems. Waller Lansden named the Industrial Development Board of Dickson County, Tennessee (the IDB) as a codefendant in this earlier action. The IDB had taken over the facility abandoned by Saltire. According to Saltire, the IDB was entitled to immunity from suit under Tennessee state law, but the IDB never moved to dismiss on this ground.

Saltire, joined by the IDB, removed the *Norman* case to federal district court on the basis of diversity of citizenship. Waller Lansden responded by moving to remand the case back to the state court, arguing that the district court lacked subject matter jurisdiction because both the plaintiffs and the IDB were citizens of Tennessee. The case was ultimately remanded to state court by agreement of the parties. In the agreement, Waller Lansden averred that the IDB was a necessary party to the state-court action, that the *Norman* plaintiffs had genuine claims against the IDB for which they sought relief, and that there was no basis for a fraudulent joinder claim.

The *Norman* case was litigated for 10 years. Saltire's parent company, Alper, which was added as a codefendant in February of 2003, filed its own notice of removal to the district court in January of 2004. In response, Waller Lansden again filed a motion to remand, arguing that the IDB was a necessary party and that complete diversity of citizenship was lacking. Waller Lansden supported its motion by proffering a letter that it had written to the IDB's attorney in January of 2002. The letter stated in pertinent part as follows:

> This letter is intended to outline our clients' intentions with regard to the [IDB]. As you know, we believe that the [IDB] is liable to our clients. We are seeking both money damages and, just as important, injunctive relief in the form of court ordered cooperation with the process of long term remediation of the site of the former Scovill facility.
>
> That said, we believe that it is not in anyone's interest to force the [IDB] to engage in expensive preparation for a trial that will focus on the activities of Scovill, Inc. In all likelihood, the completion of that trial will place the plaintiffs and the [IDB] in a position to independently settle their dispute.
>
> Therefore, the plaintiffs agree that they will, prior to the trial of this matter, file a voluntary dismissal of their action against the [IDB]. This commitment is intended to permit the [IDB] to avoid further trial preparation relating to this case.

While the motion to remand was pending in federal court, Saltire and the *Norman* plaintiffs reached a settlement in May of 2004. The IDB was not a party to this settlement agreement. After the settlement agreement was approved by the state court, all claims against the IDB were dismissed.

Saltire filed for Chapter 11 bankruptcy in August of 2004. One month later, Saltire brought the present action against Waller Lansden in the United States District Court for the Southern District of New York, alleging one count of common law fraud and one count of damages pursuant to 28 U.S.C. § 1927. Section 1927 provides that "[a]ny attorney . . . admitted to conduct cases . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id*. The § 1927 count was dropped when Saltire filed its First Amended Complaint in February of 2005 and is therefore not involved in this appeal.

In its complaint, Saltire alleges that Waller Lansden made a secret agreement with the IDB to voluntarily dismiss the IDB from the *Norman* case once the action was remanded back to state court. According to Saltire, Waller Lansden added the IDB as a sham defendant solely to defeat diversity jurisdiction and thus force the case back to state court because "[Waller Lansden] believed the State Court Action to be much more valuable in the State Court—where it would be tried before an elected local judge—rather than in the Federal Court, where it would be tried before a judge appointed by the President for a lifetime term."

Saltire argues that the 2002 letter sent by Waller Lansden to the IDB's counsel is proof of this secret agreement, and that the exposure of this letter induced Waller Lansden to settle the case. As additional proof of the alleged secret agreement, Saltire contends that the IDB never participated in any meaningful way in the state-court action:

> For example, IDB never sought to dismiss the action against it even though it believed it was immune from liability under Tennessee Law under Tennessee's Governmental Tort Liability Act (Tenn. Code Ann. §§ 29-29-102(3)(A), 29-20-201). Additionally, IDB never served any significant discovery requests and only attended one of the myriad of depositions held in the State Court Action - a deposition held in Vail, Colorado. Finally, Waller Lansden never sought any significant discovery from or pursed [sic] its purported claims against IDB in any meaningful way.

Waller Lansden moved to dismiss Saltire's action for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for failure to plead fraud with the particularity required by Rule 9(b) thereof. Alternatively, Waller Lansden sought summary judgment. It also moved the district court in New York to transfer the action to the Middle District of Tennessee. The district court in New York granted the motion to transfer and reserved Waller Lansden's motion to dismiss or, alternatively, for summary judgment for consideration by the transferee court. After the transfer, Waller Lansden filed an amended motion to dismiss. In response, Saltire moved to convert Waller Lansden's motion to dismiss into one for summary judgment.

The district court granted Waller Lansden's motion to dismiss, concluding that, as a matter of law, Saltire had failed to allege a set of facts sufficient to show that Waller Lansden committed fraud. It reasoned that all of the statements allegedly relied on by Saltire in the *Norman* case were either not material or were nothing more than legal arguments made to the district court. Moreover, even if a secret agreement with the IDB did in fact exist, reasoned the district court, Waller Lansden had no duty to disclose it to Saltire. This timely appeal followed.

## II. ANALYSIS

### A.    Standard of review

We review de novo the district court's decision to dismiss a suit pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). The court "must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." *Id*. "When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Id*. That being said, "more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988). The "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Id*. (citations and quotation marks omitted) (emphasis in original).

Plaintiffs who allege a claim of fraud must satisfy an additional requirement: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). When deciding a motion to dismiss under Rule 9(b), however, "a court must also consider the policy favoring simplicity in pleading, codified in the 'short and plain statement of the claim' requirement of Federal Rule of Civil Procedure 8." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006). "Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony." *Id*.

### B.    Common law fraud

Under Tennessee law, a plaintiff must allege with particularity all of the elements of a fraud claim in order to survive a motion to dismiss. These elements are "(1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the requirement that the misrepresentation involve a past or existing fact." *Kincaid v. SouthTrust Bank*, No. M2005-00121-COA-R3-CV, — S.W.3d —, 2006 WL 3093226, at *7 (Tenn. Ct. App. Oct. 31, 2006). For the purpose of considering a plaintiff's claim, the terms "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are synonymous. *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 905 n.1 (Tenn. 1999).

The district court began its analysis by evaluating the five statements that Saltire alleged were "false and misleading misrepresentations" made by Waller Lansden in the latter's motion to remand the *Norman* case back to the Tennessee state court:

> Because IDB is a citizen of Tennessee, this Court has no jurisdiction over this matter, there being incomplete diversity of citizenship among the parties.

> IDB is maintaining the nuisance originally established by Scovill. Therefore Plaintiff's complaint properly joins IDB as a necessary party for complete relief.

> The complaint in the state court action seeks specific relief from the Defendants (both Scovill and Dickson IDB).

> IDB is a proper party to this action and therefore its citizenship must be considered.
>
> [T]hat IDB was an "indispensable party."

Saltire also alleged that Waller Lansden failed to disclose four material facts: (1) that Waller Lansden never intended to actually obtain a judgment against the IDB, (2) that Waller Lansden entered into a secret agreement with the IDB not to seek a judgment against it, (3) that the IDB was named as a codefendant in the *Norman* case solely to deprive Saltire of its right to a federal forum, and (4) that there was no valid claim against the IDB. According to Saltire, the only reason that it consented to a remand of the *Norman* case to state court was because it relied on Waller Lansden's representation that the plaintiffs' claim against the IDB would be pursued.

The district court concluded that all five of the above-quoted statements made by Waller Lansden were either factually true or were "legal arguments of counsel presented in an effort to achieve remand of the case to state court," none of which are a proper basis for a fraud claim. It further concluded that because Waller Lansden had no duty to disclose to Saltire any agreement that it may have had with the IDB, Saltire could not "establish the elements of a cause of action for fraud by concealment."

Saltire argues on appeal that the district court erred by considering each of the allegedly fraudulent statements and omissions in isolation, and by ignoring Saltire's "core allegation" that Waller Lansden "conspired with the IDB as a sham defendant for the sole purpose of defeating diversity jurisdiction." As phrased by Saltire: "Viewed against the backdrop of Waller Lansden's secret agreement with the sham defendant, each of these statements is a material misrepresentation because it was those very statements that defeated [Saltire's] right to a federal forum." For the purpose of considering the motion to dismiss, we must assume that there was in fact a secret agreement between Waller Lansden and the IDB. *See* Fed. R. Civ. P. 12(b)(6). Saltire's claim, then, turns on whether Waller Lansden's failure to disclose the alleged secret agreement constitutes fraud.

Under Tennessee law, Saltire must prove five elements to recover for fraud based upon a claim of intentional failure to disclose a material fact: (1) that Waller Lansden concealed or suppressed a material fact, (2) that Waller Lansden had a duty to disclose that fact to Saltire, (3) that Waller Lansden intentionally concealed or suppressed that fact with the intent to deceive Saltire, (4) that Saltire was unaware of the fact and would have acted differently if it had known about the concealed fact, and (5) that Saltire was damaged as a result of the concealment or suppression of the fact. *See Justice v. Anderson County,* 955 S.W.2d 613, 616 (Tenn. Ct. App. 1997). "[A] statement is material or involves a material fact if it will likely affect the conduct of a reasonable person." *Patel v. Bayliff*, 121 S.W.3d 347, 353 (Tenn. Ct. App. 2003). The district court concluded that Waller Lansden had no duty to disclose the alleged secret agreement to Saltire, so that Saltire's claim failed as a matter of law.

Saltire, in our view, satisfied the first element of the *Justice* test. We must assume under Rule 12(b)(6) that (1) a secret agreement existed, (2) Waller Lansden had no intention of keeping the IDB as a defendant once diversity jurisdiction was defeated, and (3) Saltire relied on the lack of complete diversity when it consented to the remand of the *Norman* case to state court. Because this purported lack of diversity induced Saltire to change its behavior (i.e., agree to change forums), the concealment of the alleged secret agreement was material. *See Patel*, 121 S.W.3d at 353.

Waller Lansden counters that it had no duty under the second element of the *Justice* test to disclose its agreement with the IDB. The Tennessee Supreme Court has explained there can be no tort of fraudulent concealment absent a duty to disclose:

> The equitable doctrine of fraudulent concealment is based upon the principle of fair dealing. Where there is no dealing between the parties, there can be no concealment. And, even where the parties have had business transactions, it is universally held that mere silence does not constitute fraudulent concealment.
>
> . . .
>
> There must be a concealment, and the silence must amount to fraud. Concealment in this sense may consist in withholding information asked for, or in making use of some device to mislead, thus involving act and intention. *The term generally infers also that the person is in some way called upon to make a disclosure.* It may be said, therefore, that, in addition to a failure to disclose known facts, there must be some trick or contrivance intended to exclude suspicion and prevent inquiry, or else that there must be a legal or equitable duty resting on the party knowing such facts to disclose them.

*Patten v. Standard Oil Co. of La.*, 55 S.W.2d 759, 761 (Tenn. 1933) (quoting 12 Ruling Case Law, p. 306) (emphasis added); *see also Justice*, 955 S.W.2d at 616 ("Courts of this state have ruled that liability for non-disclosure can arise only in cases where the person sought to be held responsible had a duty to disclose the facts at issue.").

Under Tennessee law, the duty to disclose arises in only three scenarios:

1. Where there is a previous definite fiduciary relation between the parties.

2. Where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other.

3. Where the contract or transaction is intrinsically fiduciary and calls for perfect good faith. The contract of insurance is an example of this class.

*Id.* The district court concluded that none of the three scenarios was present in the *Norman* case. Clearly the first and second categories listed above do not apply because no fiduciary or contractual relationship existed between the two parties. For Waller Lansden to have had a duty to disclose under the third category, Saltire must show that the "transaction" at issue here between the two parties "is intrinsically fiduciary and calls for perfect good faith."

Our review of Tennessee caselaw indicates that its courts have not elaborated on what factual scenarios fall into this third category beyond *Justice*'s mention of the contract of insurance. We do not believe, however, that the Tennessee Supreme Court would find that a duty to disclose arises under the circumstances of the present case. To be sure, parties in an adversary proceeding have a duty of good faith, but that duty is a general one to the court. *See, e.g.*, Fed. R. Civ. P. 11 (b) ("By presenting to the court . . . a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."). Further, a trial is not a "transaction" in the sense of an exchange of goods or services for money. Waller Lansden had an intrinsically fiduciary duty to its own clients, but not to an opposing party in an adversary proceeding. And, as the district court pointed out, Saltire can point to no "Tennessee

case holding that a private cause of action for intentional fraud may be pursued against an attorney who represented an opposing party to litigation."

Instead, Saltire relies on the more general proposition that "[t]he attorney . . . is always liable for his or her own torts, irrespective of whether the attorney's actions were taken within the scope of the representation or at the behest of another." *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 398 n.8 (Tenn. 2002) (holding that an insured may not be held vicariously liable for the tortious acts of his or her attorney, but noting that the court's conclusion should not be construed to absolve the attorney of liability); *see also Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997) (denying recovery on a claim of negligent misrepresentation by a nonclient for an attorney's erroneous advice where that advice was unrelated to a business transaction, but affirming the basic principle as stated in Section 552 of the Restatement (Second) of Torts that contractual privity is not a precondition to recovery in tort).

In the present case, the theory of Saltire's fraud claim is based on Waller Lansden's *failure to disclose* the secret agreement. Although a third party injured by fraudulent conduct has a right to recover from the party committing fraud, *see Arcata Graphics Co. v. Heidelberg Harris, Inc.*, 874 S.W.2d 15, 23 (Tenn. Ct. App. 1993), a tort must first be committed. There simply is no tort in the present case unless Waller Lansden had a duty to disclose.

Although the Tennessee courts have recognized that a duty to disclose can arise even where a fiduciary relationship did not exist, there has always been a contractual or other type of business relationship between the parties underlying the fraud claim. *See, e.g., Simmons v. Evans*, 206 S.W.2d 295, 297 (Tenn. 1947) (holding that the seller of a residence had a duty to disclose material facts to the buyer "unless common observation or such inquiry as the exercise of ordinary prudence required would have furnished such information"); *Arcata*, 874 S.W.2d at 23 (allowing a claim of fraud by the seller of printing presses even though the misrepresentation at issue was not made directly to the seller but to a parent company of the buyer who was not party to the original contract of sale); *Macon County Livestock Mkt.,Inc. v. Ky. State Bank, Inc.*, 724 S.W.2d 343, 350-51 (Tenn. Ct. App. 1986) (holding that a bank had no duty to disclose material facts to a depositor or other customer relating to the shaky financial condition of the depositor's business partner unless the bank "knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying upon the bank so to counsel and inform him"). In the absence of either a fiduciary, contractual, or other business relationship in the present case, we conclude that Waller Lansden had no duty under Tennessee law to disclose the alleged secret agreement. Thus no fraudulent concealment occurred.

Saltire has also failed to offer any proof that the IDB was not a viable defendant, and we disagree with its contention that the 2002 letter to the IDB was conclusive proof of Waller Lansden's alleged intent to defraud Saltire of its right to litigate in a federal forum. In the first place, Waller Lansden voluntarily submitted the letter in support of its second motion to remand, a move that is totally inconsistent with the argument that the letter evidences a fraudulent secret agreement with the IDB. Second, the letter reflects Waller Lansden's contention that the IDB *was* liable to its clients because the IDB was maintaining the nuisance allegedly brought about by Saltire. The letter essentially states that Waller Lansden believed Saltire was more at fault than the IDB, that the plaintiffs would focus their efforts in obtaining a favorable jury verdict against Saltire, and that "the completion of that trial will place the plaintiffs and the [IDB] in a position to independently settle their dispute."

As to the final portion of the letter concerning the agreement to dismiss the IDB as a defendant prior to trial, the effect of such action on Saltire's right to then remove was never reached due to the settlement between the *Norman* plaintiffs and Saltire. There may well have been no effect on Saltire's right to remove. "A case that is not removable when commenced subsequently may

become removable under some circumstances—for example, when the plaintiff . . . has dropped a party from the litigation whose previous presence defeated diversity of citizenship jurisdiction." 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3721 (3d ed. 1998). Had Saltire been unable to remove, it still had a remedy for Waller Lansden's alleged misconduct in the state court—namely, it could have sought sanctions pursuant to Rule 11.03 of the Tennessee Rules of Civil Procedure.

What Waller Lansden's actions boil down to, in our view, is litigation strategy. Litigation strategy cannot, without more, support an action for fraud. *See Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) (holding that the "burden of proving fraudulent joinder" is on the alleging party and that the defendant's "motive in joining [the nondiverse party] is immaterial to our determination regarding fraudulent joinder"). Saltire had no way of proving that the IDB was fraudulently joined to defeat diversity because it would have had to show that the facts pled by the *Norman* plaintiffs could not have legally created liability on the part of the IDB. *See id.* at 908-909 (affirming the district court's denial of the plaintiff's motion to remand to state court in a contractual dispute where the nondiverse defendant was not a party to the original contract and where the declaratory relief sought against the nondiverse defendant was unwarranted because the initial dispute had already ripened into a breach-of-contract action); *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940 (6th Cir. 1994) (holding that "there can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law" and that any disputed questions or ambiguities in the controlling state law should be resolved in favor of the nonremoving party).

Even if we accept, *arguendo*, that Waller Lansden had a duty to disclose in the present case, Saltire's claim still fails as a matter of law because it cannot show damages, a required element of the claim. *See City State Bank v. Dean Witter Reynolds, Inc*., 948 S.W.2d 729, 738 (Tenn. Ct. App. 1996) (holding that in order to recover on a claim of fraudulent misrepresentation, the plaintiff must show that he or she "suffered damage as a result of the representation"). The only damage alleged by Saltire is that it "incurred more than one million dollars in attorneys' fees and other litigation costs in the State Court Action."

Tennessee caselaw is silent on the issue of whether damages attributable to the cost of litigation are sufficient to meet the damages element of a fraud claim. Waller Lansden cites *Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Maryland*, 763 F. Supp. 28, 33 (S.D.N.Y.), *modified in part on other grounds*, 768 F. Supp. 115 (S.D.N.Y. 1991), for the proposition that "[d]amages attributable solely to the existence of litigation are clearly insufficient to sustain the necessary element of damages in a fraud claim." (citation and quotation marks omitted). *Morse/Diesel* was construing New York law rather than Tennessee law, but the point is well-taken.

The real problem, moreover, is that Saltire is attempting to recover all of its litigation costs despite the absence of any proof that the *Norman* case would have been more quickly or more favorably resolved had Waller Lansden not committed the alleged fraud. It argues only that Waller Lansden "believed the State Court Action to be much more valuable in the State Court—where it would be tried before an elected local judge—rather than in the Federal Court, where it would be tried before a judge appointed by the President for a lifetime term." Waller Lansden counters that Saltire is simply seeking to be compensated for the alleged disparity in efficiency between Tennessee state and federal courts, which is too speculative to support the damages element of fraud.

We agree with Waller Lansden on this point. Speculative damages cannot support a cause of action for fraud. *Kubicek v. J. Walter Thompson U.S.A., Inc*., No. 89-1731, 1990 WL 57234, at *5 (6th Cir. May 2, 1990) (affirming the dismissal of the plaintiff's claim for fraud because the claimed damages flowing from his decision to leave his job in West Germany to accept a job in Detroit on the basis of the defendant's alleged fraudulent representations regarding what his job

assignments would be were too speculative to support a fraud claim); *Anderson-Gregory Co. v. Lea*, 370 S.W.2d 934, 937 (Tenn. Ct. App. 1963) (noting that "it is the rule that speculative damages cannot be recovered").

Saltire bore the burden of demonstrating the cost differential of litigating the *Norman* case in federal court as opposed to state court. It failed to do so. Furthermore, as the district court pointed out, Saltire agreed to settle the case *after* the disclosure of the alleged "smoking gun" letter, so there is not even an arguably excessive state-court jury verdict for Saltire to point to. Nor does Saltire argue that the amount of the settlement agreement was higher than the amount it could have settled for had the case remained in federal court. Saltire's alleged damages, therefore, consist solely of its litigation costs.

At oral argument, Saltire's attorney attempted to narrow his client's damage claim by contending that it had suffered actual damages in the form of having to defend two motions to remand that it otherwise would not have had to do absent the alleged secret agreement. He did not, however, know what those costs were or whether they amounted to more than $75,000, the minimum amount of damages required to maintain a diversity suit in federal court. 28 U.S.C. § 1332(a). "[T]he general rule in diversity cases [is] that the amount claimed by a plaintiff in his complaint determines that amount in controversy, unless it appears to a legal certainty that the claim is for less than the jurisdictional amount." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 884 (6th Cir. 2005). Even if we were to assume for the sake of argument that the cost of defending those two motions met the jurisdictional amount (a very doubtful assumption), that does not change the fact that Saltire's alleged damages consist solely of its litigation costs. As explained above, that is not enough to sustain a fraud claim.

Moreover, as Waller Lansden points out, asking the district court to find that a Tennessee state court is less efficient and more costly to the parties than a federal court based in Tennessee violates fundamental principles of comity, federalism, and respect for state courts. Saltire argues in response that we must simply determine whether Saltire has sufficiently pled the existence of a distinction. In our view, however, there is no point in pleading the existence of this alleged distinction without having the ability to prove that one court is less efficient or more costly than the other. We decline to take part in such a speculative debate.

Finally, Saltire was not without a remedy in the present case if it believed that Waller Lansden had engaged in improper litigation tactics in order to secure a more favorable forum for its clients. As the district court noted, Saltire could have sought sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure against Waller Lansden after the latter disclosed the 2002 letter in support of the plaintiffs' second motion to remand. It chose not to do so. Nor did Saltire allege a fraudulent joinder of the IDB against Waller Lansden at any point during the *Norman* proceedings. Having forgone these more opportune times to complain, we find no merit in Saltire's current attempt to recover its legal fees in the earlier action.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.