*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0161p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

PHILIP H. SANDERSON,

>  *Plaintiff-Appellant,*

>  *v.*

No. 04-6342

HCA-THE HEALTHCARE COMPANY; COLUMBIA
HEALTH CARE CORPORATION; HOSPITAL
CORPORATION OF AMERICA; and HEALTHTRUST
INC.,

>  *Defendants-Appellees.*

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 01-00580—William J. Haynes, Jr., District Judge.

Argued: September 19, 2005

Decided and Filed: May 12, 2006

Before: DAUGHTREY and MOORE, Circuit Judges; ALDRICH, District Judge.[*]

---

## COUNSEL

**ARGUED:** John D. Schwalb, WILLIAMS & SCHWALB, Franklin, Tennessee, for Appellant. Walter P. Loughlin, LATHAM & WATKINS, New York, New York, for Appellees. **ON BRIEF:** John D. Schwalb, WILLIAMS & SCHWALB, Franklin, Tennessee, for Appellant. Walter P. Loughlin, LATHAM & WATKINS, New York, New York, John R. Hellow, HOOPER, LUNDY & BOOKMAN, Los Angeles, California, for Appellees.

---

## OPINION

---

MARTHA CRAIG DAUGHTREY, Circuit Judge. In this False Claims Act suit, Philip Sanderson charged that the defendants, HCA – The Healthcare Company (now HCA, Inc.) and its corporate predecessors, Columbia Health Care Corporation, Hospital Corporation of America, and HealthTrust, Inc. (collectively "HCA"), had violated the Act by filing "hospital cost reports" based on the allocation of corporate debt expense to its individual facilities rather than to the "home

---

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

office," a practice that Sanderson contends was in violation of Medicare and similar federal programs from which HCA was claiming reimbursement. The district court dismissed the complaint, holding that, as amended, it failed to meet the pleading standards for allegations of fraud under Federal Rule of Civil Procedure 9(b), that it failed to state a cause of action under Rule 12(b)(6), and that it was filed outside the applicable six-year statute of limitations. Because we conclude that the complaint was subject to dismissal for failure to conform to the requirements of Rule 9(b), we affirm the judgment of the district court. Having made that determination, we decline to address the remaining questions raised on appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

Sanderson was employed by HCA – one of the country's largest hospital chains – from 1975 to 1989, working as an auditor responsible for, among other things, reviewing cost reports, preparing budgets, and coordinating year-end audits by outside auditing firms. On June 28, 2001, more than 11 years after he left HCA, Sanderson filed this *qui tam* action in the name of the United States, charging that the defendants had overcharged the government for reimbursements under the Medicare, Medicaid, and Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) programs.[1] Specifically, the plaintiff claimed as relator that the defendants had incurred millions of dollars of debt for construction purposes as part of a long-term acquisition and expansion project. Rather than claim this debt as an expense of the home office and submit it as an expense for federal reimbursement based on the weighted-average Medicare use rate of all HCA-owned hospitals, the plaintiff alleged, the defendant allocated this corporate debt among the individual hospitals based on the percentage of Medicare-eligible service the hospitals provided. In this way, the plaintiff claimed, the largest portions of the debt were included in the expenses of those hospitals that had the highest Medicare service rates, and HCA was thereby able to reap the greatest federal reimbursement possible.

The *qui tam* complaint included a handwritten "analysis of debt allocation" prepared by Sanderson that purported to reflect how several multi-million dollar debt issuances by HCA had been allocated among various hospitals for the years 1981-1986. The latest item on the list was dated August 21, 1986. The plaintiff also attached two internal memoranda written from one HCA official to another in 1981 and a third written in 1983 that discussed the debt allocation. These were the only specific dates and incidents included in the original complaint. However, following both a notice from the government that it was declining to intervene in the action and a motion to dismiss filed by HCA, the plaintiff amended the complaint, purportedly to "plead more particularly." Nevertheless, the amended complaint was virtually unchanged from the original, except that it offered a more detailed explanation of the process by which the defendants allegedly overcharged the United States and claimed that "the defendants and their predecessors, upon information and belief either continued the direct assignment of debt or made a direct 'reassignment' of debt and corresponding debt expense to the same facilities or other facilities with greater utilization rates . . . ." The plaintiff's allegation that some of the various notes securing the company's construction debts were not due until 1996 and 1999 and that one set of debentures would come "due in 2016 " set out the only dates in the amended complaint that fell within the statute of limitations.

The complaint did not refer to a specific fraudulent cost report or other claim filed with the government, nor did it detail who had filed such a claim or when it had been filed. The plaintiff, in a grammatically awkward allegation, asserted that the defendant's interest expense "*is* ongoing and continues until such time as the debt *was* fully retired, thereby resulting in continued overpayment until such time as the debt *was* fully paid or amortized. Thus, debt assigned in year one *would* result in an inflated cost report for the facility for as many as 20 or even 30 years into the future and

---

[1]The CHAMPUS program is now known as the TRICARE Management Activity.

*continues to this day.*"  There is, however, no allegation that the debentures are still outstanding, only that if not "fully paid or amortized," they would produce inflated debt expense.

The other component missing from the complaint is any identification of the "applicable laws and regulations" that purportedly required allocation of debt expense to the "home office."

The defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the six-year statute of limitations in the False Claims Act, 31 U.S.C. § 3731(b)(1).  The district court granted the motion on all three grounds, finding that the plaintiff had failed "to set forth specific allegations of fraudulent conduct . . . within six years of the filing date of this action."  Specifically, the court held that the bare contention in the amended complaint that HCA's allegedly fraudulent conduct continued after 1995, based only upon "information and belief," was too "vague and cursory [to] rise to the heightened level of the requisite specificity under Rule 9(b)."  The court also ruled that the complaint failed to state a claim upon which relief could be granted because the complaint "fails to describe . . . any fraudulent claims made *during the statutory period*" or "identify any applicable rule or regulation that was violated by HCA since 1995."  (Emphasis added.)  This appeal ensued.

## DISCUSSION

We review *de novo* a district court's dismissal of a complaint for failure to state a claim, including dismissal for failure to plead with particularity under Rule 9(b).  *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003).  In acting upon a motion to dismiss, a district court must accept as true the plaintiff's well-pleaded facts and draw all reasonable inferences in favor of the complaint.  *Id.*  Moreover, a complaint may not be dismissed "'unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'"  *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988) (citing *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957)).  However, when deciding a motion to dismiss under Rule 9(b) for failure to plead fraud with particularity, a court must also consider the policy favoring simplicity in pleading, codified in the "short and plain statement of the claim" requirement of Federal Rule of Civil Procedure 8.  As we have noted, "Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony."  *Michaels Bldg. Co.*, 848 F.2d at 679.  On the other hand, a district court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions.  *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

The False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, makes illegal the submission of false or fraudulent claims to the federal government.  The so-called "qui tam" provision in § 3730(b) authorizes private individuals to sue on behalf of the government in order to aid in ferreting out abuses, thereby "unleashing a posse of *ad hoc* deputies to uncover and prosecute frauds against the government."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citations and internal quotation marks omitted).  Originating during the Civil War in response to widespread fraud in wartime defense contracts, the Act has been repeatedly amended, representing "a long history of repeated congressional efforts to walk a fine line between encouraging whistle-blowing and discouraging opportunistic behavior."  *United States ex rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d 220, 225 (1st Cir. 2004) (internal citations and quotations omitted).  The facts here suggest that opportunism rather than legitimate whistle-blowing motivated the filing of Sanderson's complaint.

Because the basis for a *qui tam* action is *fraud* in the filing of claims against the government, we have held, as have other circuit courts in False Claims Act cases, that allegations in the complaint must comply with the particularity requirements of Federal Rule of Civil Procedure 9(b).  *Yuhasz*, 341 F.3d at 563; *see also Karvelas*, 360 F.3d at 228 (collecting cases).  We have further interpreted

Rule 9(b) to require that a plaintiff "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz*, 341 F.3d at 563 (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)). As a sister circuit has phrased it, "[a]t a minimum, Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (citation omitted).

We conclude that the district court was correct in finding that Sanderson failed to allege a False Claims Act claim with sufficient particularity, as Rule 9(b) requires. The complaint sets out at some length a description of the accounting methodology used by HCA in allocating corporate debt, even identifying some of the specific loans undertaken by HCA and future dates on which the notes and debentures securing those loans came due. The plaintiff describes this accounting method as "prohibited" and asserts that any claims against the government for reimbursement of debt expenses resulting from the accounting method must necessarily violate the Act. Unfortunately for the plaintiff, there is no specific information about the filing of the claims themselves – nothing, that is, to alert the defendants "to the precise misconduct with which they are charged and [to] protect[ ] defendants against spurious charges of immoral and fraudulent behavior." *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting *Ziemba v. Cascade Int'l., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). As the Eleventh Circuit has held, in *qui tam* actions, the heightened pleading requirements of Rule 9(b) are met by a complaint that sets out:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the [government], and (4) what the defendants obtained as a consequence of the fraud.

*Id.* Here, as in the Eleventh Circuit's *Clausen* case, the plaintiff's complaint "does not identify any specific claims that were submitted to the United States or identify the dates on which those claims were presented to the government and relies [instead] exclusively on conclusory allegations of fraudulent billing." *Id.* at 1311 (citations omitted). But, as the *Clausen* opinion notes, "[t]he False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." *Id.* As a result, Rule 9(b) "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply . . . that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Id.*

Like the fraudulent scheme in *Clausen*, the accounting method at the heart of the allegation of fraud in this case is likewise not a violation of the Act, "because the statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'" *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995). *See also Thompson*, 125 F.3d at 902 (claims for services rendered in violation of a statute do not necessarily constitute false or fraudulent claims under the FCA); *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996) ("Violations of laws, rules, or regulations alone do not create a cause of action under the FCA."). Thus, as the court noted in *Clausen*, the fraudulent claim is "the *sine qua non* of a False Claims Act violation." 290 F.3d at 1311. As to the claims in this case, however, we have only the allegation that to the plaintiff's "information and belief," fraudulent claims have been made based on HCA's allegedly illegal accounting methodology. And although courts have permitted allegations of fraud based upon "information and belief," the complaint "must set forth a factual basis for such belief," and the allowance of "this exception 'must not be mistaken for license to base

claims of fraud on speculation and conclusory allegations.'" *Thompson*, 125 F.3d at 903 (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 n. 3 (5th Cir. 1994)).

Clearly, what is alleged in the complaint before us is limited to speculation and unsupported conclusion: that HCA's accounting methodology is prohibited (a fact that the plaintiff asserted, but never supported by reference to any law or regulation), that unidentified persons made claims for reimbursement based on the accounts on unspecified occasions and, as a result, that all such claims violate the Act. Just as clearly, the district court was correct in finding that these allegations failed to satisfy Rule 9(b). As the Eighth Circuit noted in a recent False Claims Act decision that, like this case, involved allegedly fraudulent Medicaid/Medicare billing, Rule 9(b) requires a *qui tam* plaintiff to do more than merely charge that the defendants engaged in fraudulent schemes that were "pervasive and wide-reaching in scope" and then "argue[ ] that the defendants must have submitted fraudulent claims" to the government. *United States ex rel. Joshi v. St. Luke's Hospital, Inc.*, 441 F.3d 552, 557 (8th Cir. 2006) (citing *Corsello v. Lincare, Inc.*, 428 F.3d 1008,1013 (11th Cir. 2005), as disallowing a complaint that alleged improper business practices but "failed to provide a factual basis to conclude fraudulent claims were ever actually submitted to the government in violation of the False Claims Act").

Moreover, the district court's Rule 9(b) determination was fully in conformity with existing Sixth Circuit precedent, notably our recent False Claims Act decision in *Yuhasz*, as reaffirmed in *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634 (6th Cir. 2003). Like HCA, the defendant in *Yuhasz* was a government contractor – but in the aerospace rather than the health care industry. Yuhasz charged Brush Wellman with submitting reimbursement claims for the production of alloys that did not, in fact, meet government specifications. The complaint was replete with details concerning deficiencies in the defendant's manufacturing process but did not assert that any specific false claims had been submitted to the government. We held that "[t]he failure to identify specific parties, contracts, or fraudulent acts require[d] dismissal." 341 F.3d at 564. In doing so, we relied on the analysis in *Clausen*, as well as that in *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F. Supp. 2d 141, 147 (D. Mass. 2000), in which the court noted that the plaintiff had "set[ ] out a methodology by which the vendors might have produced false invoices, which in turn could have led to false claims," but dismissed the complaint for failure to comply with Rule 9(b) because it failed to "cit[e] a single false claim arising from an allegedly false invoice." *Id*. Like Yuhasz, plaintiff Sanderson has proved "unable to identify a specific claim submitted directly to the United States by [the defendant]," 341 F.3d at 564, and, like the complaint in *Yuhasz*, Sanderson's complaint was properly dismissed by the district court.

We conclude that the district court was likewise correct in determining that the complaint was not timely filed and did not state a cause of action on which relief could be granted, both grounds for dismissal under Rule 12(b)(6). Because the basis for the Rule 9(b) determination is so clearly indicated, however, we find it unnecessary to discuss the remaining issues raised under Rule 12(b)(6).

## *CONCLUSION*

For the reasons set out above, we AFFIRM the judgment of the district court.