UNITED STATES of America, ex
rel. Brian EBERHARD et
al., Plaintiffs,

Brian Eberhard, Plaintiff–Appellant,

v.

PHYSICIANS CHOICE LABORATORY
SERVICES, LLC, Defendant–
Appellee.

No. 15–5691.

United States Court of Appeals,
Sixth Circuit.

Feb. 23, 2016.

Before: MOORE and COOK, Circuit Judges; and PEARSON, District Judge.*

## OPINION

KAREN NELSON MOORE, Circuit Judge.

Plaintiff–Appellant Brian Eberhard brought a *qui tam* action against his former employer, Defendant–Appellee Physicians Choice Laboratory Services ("PCLS"), alleging that PCLS violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* The district court dismissed Eberhard's complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, finding that Eberhard failed to specify any false claim that was actually submitted to the government. Eberhard now appeals, arguing that the district court should have applied a "relaxed" Rule 9(b) standard because Eberhard alleged "personal knowledge" of the false claims. Eberhard also argues that the district court abused its discretion in denying his request for discovery. For the reasons discussed below, we **AFFIRM** the district court's dismissal of Eberhard's complaint.

## I. BACKGROUND

Eberhard worked as a sales employee for PCLS, a medical testing service, beginning in September 2012. R. 21 (First Am. Compl. at 6) (Page ID # 124). Eberhard "was responsible for sales of PCLS lab services in the states of Tennessee, Kentucky, and Alabama." *Id.*

On June 6, 2014, Eberhard filed a *qui tam* action against PCLS in the name of the United States and several states. R. 1 (Compl. at 3) (Page ID # 3). Eberhard's complaint alleged that PCLS violated the

FCA, 31 U.S.C. § 3729 *et seq.;* the Federal Anti–Kickback statute ("AKS"), 42 U.S.C. § 1320a–7b; and various state statutes. *Id.* The United States declined to intervene on December 17, 2014. R. 8 (Notice of Election to Decline Intervention) (Page ID # 44). On February 19, 2015, PCLS moved to dismiss, R. 14 (Mem. in Supp. of Mot. to Dismiss at 1–2) (Page ID # 59–60), and Eberhard subsequently filed a First Amended and Restated Complaint on March 11, 2015. R. 21 (First Am. Compl.) (Page ID # 119). Eberhard also filed a Motion to Authorize Discovery, requesting the production of documents, interrogatories, and one deposition. R. 20 (Mot. to Authorize Disc. at 1–3) (Page ID # 88–90).

The amended complaint set forth the following factual allegations. PCLS "contracts with a cadre of independent contractors"—the "1099 sales force"—and has done so "since shortly after its formation." R. 21 (First Am. Compl. at 7–8) (Page ID # 125–26). These independent contractors are paid "on a percentage basis to induce them to solicit the referral of samples to [PCLS] for testing and subsequent billing to Medicare or Medicaid state reimbursement plans." *Id.* at 8 (Page ID # 126). Eberhard attached PCLS's "Sales Representation Agreement" as an exhibit to his complaint, along with a list of 1099 representative groups. R. 21–1 (First Am. Compl. Ex. A) (Page ID # 135); R. 21–2 (First Am. Compl. Ex. B) (Page ID # 155). According to the Sales Representation Agreement, sales representatives receive a ten percent "commission on sales of Products and Services." R. 21–1 (First Am. Compl. Ex A at 1) (Page ID # 135).

---

* The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

The amended complaint contained two counts against PCLS: Count One alleged violations of the AKS and Count Two alleged violations of the FCA. R. 21 (First Am. Compl. at 9) (Page ID # 127). According to the complaint, PCLS's commission structure violates the AKS because it offers payment to the 1099 sales force in order to induce Medicare and Medicaid referrals. *Id.* at 8 (Page ID # 126). And because PCLS has to "certif[y] that it is in compliance with the Anti–Kickback Act" when it submits claims to Medicare and Medicaid, Eberhard claims that PCLS has violated the FCA in submitting claims "based on referrals obtained in violation of the" AKS. *Id.* at 7 (Page ID # 125). Moreover, PCLS's website "advertises that it complies with all [Centers for Medicaid and Medicare Services] regulations." *Id.* at 6, 9 (Page ID # 124, 127). The complaint provides that, in May 2014, independent contractors submitted 14,176 samples to PCLS; in April 2014, they submitted 14,073 samples. *Id.* at 8 (Page ID # 126). "Based upon [Eberhard's] knowledge of the payor of the samples [that he] procures as an employee of PCLS[,] in excess of 50% of the samples are paid for through Medicare or Medicaid." *Id.* Accordingly, "in May 2014 alone 7,000 samples were paid by Medicare or Medicaid to PCLS in violation of the Federal False Claims Act." *Id.*

PCLS moved to dismiss the amended complaint on March 16, 2015. R. 22 (Mot. to Dismiss First Am. Compl.) (Page ID # 157). First, PCLS argued that "[t]he AKS contains no private right of action," and thus Eberhard lacked standing to bring Count One. R. 23 (Mem. in Supp. of Mot. to Dismiss at 3) (Page ID # 166). Second, PCLS contended that the district court should dismiss Count Two because it failed to state a claim under Rule 12(b)(6) and because it failed to meet Rule 9(b)'s heightened pleading requirements for pleading fraud. *Id.* at 4 (Page ID # 167). According to PCLS, Eberhard's complaint failed to "identif[y] *any* actual false claim that was submitted to the government," a requirement under Rule 9(b). *Id.* at 5 (Page ID # 168).

In his response to PCLS's motion, Eberhard conceded that he did not have standing to state a claim under the AKS. R. 27 (Resp. in Opp. to Mot. to Dismiss at 6–7) (Page ID # 204–05). Eberhard also admitted that he "d[id] not allege the presentment of a specific claim to the government" and that he "d[id] not identify a specific false certification" for purposes of establishing a violation of the FCA. *Id.* at 9, 10–11 (Page ID # 207, 208–09). Eberhard maintained, however, that his complaint satisfies Rule 9(b) because this Circuit "has recognized that the particularity requirement may be relaxed where 'a relator alleges facts from which it is highly likely that a claim was submitted to the government for payment.'" *Id.* at 9 (Page ID # 207) (citing *Chesbrough v. VPA, P.C.,* 655 F.3d 461, 472 (6th Cir.2011)). According to Eberhard, the facts alleged in his complaint established that "[i]t is a fair inference that [PCLS] submitted approximately 7,000 claims for laboratory services arising out of the unlawful payment scheme to Medicaid and Medicare in April and May 2014." *Id.* at 10 (Page ID # 208).

The district court granted PCLS's motion to dismiss on June 2, 2015. R. 29 (Dist. Ct. Op. at 1) (Page ID # 228). The district court found that Eberhard did not satisfy the heightened pleading standard imposed by Rule 9(b) because his complaint was "completely void of any specific false claim or false certification of compliance presented to the government." *Id.* at 5 (Page ID # 232). The district court disagreed that Eberhard's complaint justified a relaxation of Rule 9(b). *Id.* According to the district court, a relaxed standard

is available "in the face of a '*strong* inference'" that a defendant submitted a false claim, which Eberhard failed to provide. *Id.* at 5–6 (Page ID # 232–33) (quoting *Chesbrough,* 655 F.3d at 471–72). The district court also dismissed Eberhard's motion for limited discovery, finding that it would "equate to a 'fishing expedition' at the expense of the Defendant." *Id.* at 6–7 (Page ID # 233–34) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 501 F.3d 493, 510 (6th Cir.2007)).

The district court entered final judgment on June 3, 2015. R. 30 (Judg.) (Page ID # 235). Eberhard filed a timely Notice of Appeal on June 18, 2015. R. 32 (Not. of Appeal) (Page ID # 242).

## II. DISCUSSION

### A. Standard of Review

"This Court reviews *de novo* a district court's dismissal of a complaint for failure to state a claim, including dismissal for failure to plead with particularity under [Federal Rule of Civil Procedure] 9(b)." *Bledsoe,* 501 F.3d at 502 (internal quotation marks omitted). In ruling "[o]n a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). We review the denial of a discovery request for abuse of discretion. *See Robertson v. Lucas,* 753 F.3d 606, 623 (6th Cir.2014).

### B. The District Court Did Not Err in Dismissing Eberhard's Complaint Under the Heightened Pleading Requirements of Rule 9(b).

First, Eberhard argues that the district court erred in dismissing his complaint under Rule 9(b). Eberhard's complaint alleges that PCLS violated the FCA. "The FCA penalizes '[a]ny person who ... knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval.'" *Chesbrough,* 655 F.3d at 466 (quoting 31 U.S.C. § 3729(a)(1)). Because the FCA prohibits fraud, "[c]omplaints alleging FCA violations must comply with Rule 9(b)'s requirement that fraud be pled with particularity." *Id.* Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," although mens rea "may be alleged generally." Fed.R.Civ.P. 9(b). In order to satisfy Rule 9(b), a complaint alleging violations of the FCA must state "(1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Chesbrough,* 655 F.3d at 467 (internal quotation marks omitted).

■ Eberhard has failed to identify "the time, place, and content of [PCLS's] alleged misrepresentation." *See id.* In assessing FCA claims under Rule 9(b), our Circuit imposes a "strict requirement that relators identify actual false claims." *Id.* at 472; *see also United States ex rel. Marlar v. BWXT Y-12, LLC,* 525 F.3d 439, 446 (6th Cir.2008); *Bledsoe,* 501 F.3d at 505. Indeed, although some circuits "hold[ ] that it is sufficient for a plaintiff to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted," we have joined the Fourth, Eighth, and Eleventh Circuits in requiring "'representative samples' of the alleged fraudulent conduct." *Foglia v. Renal Ventures Mgmt., L.L.C.,* 754 F.3d 153, 155–57 (3d Cir.2014) (recog-

nizing circuit split and joining the First, Fifth, and Ninth Circuits in not requiring a representative claim). Under our case law, "Rule 9(b) does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply ... that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted." *Sanderson v. HCA–The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir.2006) (internal quotations omitted). Rather, "[a] relator cannot meet [Rule 9(b)'s] standard without alleging which specific false claims constitute a violation of the FCA." *Bledsoe*, 501 F.3d at 505. Here, Eberhard concedes that his complaint does "not allege the presentment of a specific claim to the government." R. 27 (Resp. in Opp. to Mot. to Dismiss at 9) (Page ID # 207). Accordingly, under our Circuit's "strict" standard, *see Chesbrough*, 655 F.3d at 467, Eberhard cannot meet the pleading requirements of Rule 9(b).

Eberhard argues, however, that his complaint should not be dismissed because he is entitled to a relaxation of the representative-claim requirement. *See* Appellant Br. at 14. Although our cases have continued to affirm that we impose a "strict requirement that relators identify actual false claims," we have "left open" the possibility that Rule 9(b)'s requirement might be relaxed in some circumstances. *Chesbrough*, 655 F.3d at 470, 472. In *Bledsoe*, we recognized a relaxed standard might be available "in circumstances where a relator demonstrates that he cannot allege the specifics of actual false claims that in all likelihood exist, and the reason that the relator cannot produce such allegations is not attributable to the conduct of the rela-

tor." *Bledsoe*, 501 F.3d at 505, 504 n. 12. We clarified this possibility in *Chesbrough*, citing cases from the Eleventh Circuit and the Eastern District of Tennessee indicating that Rule 9(b) "may be relaxed when, even though the relator is unable to produce an actual billing or invoice, he or she has pled facts which support a strong inference that a claim was submitted." *Chesbrough*, 655 F.3d at 471. Specifically, a sufficiently strong "inference may arise when the relator has personal knowledge that the claims were submitted by Defendants ... for payment." *Id.* (internal quotation marks omitted). Although acknowledging this potential relaxed standard in *Chesbrough*, however, we declined to relax Rule 9(b) in that case, *see id.* at 472, and we have yet to apply a relaxed Rule 9(b) standard in practice.

■ Eberhard argues that we should relax Rule 9(b) here because his complaint alleged sufficient "personal knowledge" that PCLS submitted false claims. Appellant Br. at 12. Eberhard contends that PCLS operates in violation of the AKS, which prohibits "knowingly and willfully offer[ing] or pay[ing] any remuneration (including any kickback, bribe, or rebate) ... to any person to induce such person ... to refer an individual to a person for the furnishing" of business paid for through a federal health care program. 42 U.S.C. § 1320a–7b(b)(2). According to Eberhard, PCLS's payment of commissions to 1099 sales agents is "remuneration" under the AKS. And because "[c]ompliance with the Anti–Kickback Act is a material condition of payment by the Medicare and Medicaid programs,"[1] PCLS violates the FCA in submitting

---

1. In support of this statement, Eberhard's complaint cites *United States ex rel. Fry v. Health Alliance of Greater Cincinnati*, No. 1:03–cv–00167, 2008 WL 5282139, at *12 (S.D.Ohio Dec. 18, 2008), which noted that

"compliance with the Anti–Kickback Statute is a condition of government payment" under Medicaid. *See* R. 21 (First Am. Compl. at 7) (Page ID # 125).

claims for payment to Medicare and Medicaid from samples submitted by 1099 sales representatives. R. 21 (First Am. Compl. at 7) (Page ID # 125).[2]

According to Eberhard, his complaint established that he "was an employee of PCLS and was responsible for the sales of PCLS's lab testing services" in several states. Appellant Br. at 12. Eberhard states that his complaint provides, based upon his personal knowledge, the "number of claims submitted by the 1099 sales force for two specific months" and that Medicare and Medicaid paid "in excess of 50% of the samples" that 1099 agents submitted in those months. *Id.* at 12–13. Eberhard claims that this is sufficient to establish a "strong inference that claims were submitted to the federal government in violation of the" FCA. *Id.* at 13.

We disagree. In *Chesbrough*, we refused to relax the representative-claim requirement where the plaintiff's "personal knowledge" related only to "the allegedly fraudulent scheme" and not the submission of specific fraudulent claims. *Chesbrough*, 655 F.3d at 472. This is because, as discussed above, "it is insufficient to simply plead [a fraudulent] scheme" under Rule 9(b). *Id.* at 470. The FCA "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the *claim for payment*." *Sanderson*, 447 F.3d at 877–78 (emphasis added) (internal quotation marks omitted).

Indeed, for this reason, we have required a plaintiff to allege "specific information about the filing of the claims themselves" even where the complaint alleges a fraudulent scheme from which a defendant's claims for reimbursement "must necessarily violate the" FCA. *Id.* at 877.

The cases that *Chesbrough* cited as recognizing a relaxed Rule 9(b) standard are consistent with this case law. These cases involved individuals who, although unable to produce a fraudulent claim, had "personal knowledge of billing practices or contracts with the government" and thus could provide specific facts that raised a sufficiently strong inference that fraudulent claims were submitted to the government. *Chesbrough*, 655 F.3d at 471–72. For example, in *United States ex rel. Lane v. Murfreesboro Dermatology Clinic, PLC*, No. 4:07–cv–4, 2010 WL 1926131, at *4 (E.D.Tenn. May 12, 2010), the "[p]laintiff assert[ed] that she and her co-workers personally implemented the billing practices described by submitting actual claims to Medicare." In *Hill v. Morehouse Medical Associates, Inc.*, No. 02–14429, 2003 WL 22019936, at *1 (11th Cir. Aug. 15, 2003), the plaintiff "worked as a certified professional coder and biller for" the defendant. Her complaint described the defendant's Medicare coding and billing process and "alleged that she observed dozens of claims submitted daily to Medicare" pursuant to fraudulent schemes. *Id.*

---

**2.** We thus interpret Eberhard's complaint as presenting an "implied false certification" theory of FCA liability. *See United States ex rel. Hobbs v. MedQuest Assocs., Inc.*, 711 F.3d 707, 714 (6th Cir.2013). Eberhard alleges that PCLS has submitted "legally" false claims in that it has impliedly certified that it has complied with the AKS because it has submitted claims for payment to Medicare and Medicaid, and these programs explicitly condition payment on AKS compliance. *See* Appellant Br. at 11. We note that the Supreme Court recently granted certiorari in

*Universal Health Services, Inc. v. United States ex rel. Escobar,* — U.S. ——, 136 S.Ct. 582, 193 L.Ed.2d 465 (2015), a case that presents the issue of whether the "implied certification" theory is viable under the FCA. As discussed further below, we affirm the dismissal of Eberhard's complaint based on his failure to plead the "time, place, and content of the alleged misrepresentation," not on his theory of the alleged "fraudulent scheme." *Chesbrough*, 655 F.3d at 467. Accordingly, our decision does not depend on the outcome in *Universal Health Services.*

Eberhard cannot claim such personal knowledge here. Rather, like the plaintiffs in *Chesbrough*, Eberhard can allege knowledge of only the "fraudulent scheme." *See Chesbrough*, 655 F.3d at 472. Eberhard's complaint alleges that members of the "1099 sales force" submitted thousands of samples *to PCLS* for testing. R. 21 (First Am. Compl. at 8) (Page ID # 126). And, based on the samples that *Eberhard* procured while he was an employee—as opposed to a 1099 salesman himself—he alleges that at least 50% of the 1099 sales force's submissions to PCLS would have been paid for by Medicare and Medicaid. *Id.* Other than this 50% estimate, which itself appears to be based on an inference, Eberhard's complaint does not allege any personal knowledge or any specifics of PCLS's submission of claims to the government. Eberhard's alleged personal knowledge does not entitle him to a relaxation of Rule 9(b).

We note that, although Eberhard relies on his personal knowledge to argue that a relaxed Rule 9(b) standard should apply to his complaint, *Chesbrough* indicated that personal knowledge is only one way in which a plaintiff may establish a "strong inference" that false claims were submitted. *See Chesbrough*, 655 F.3d at 472. We noted in *Chesbrough* that "[t]here may be other situations in which a relator alleges facts from which it is highly likely that a claim was submitted to the government for payment." *Id.* Here, however, Eberhard's sparse complaint does not provide us with particular "facts [that] support a strong inference—rather than simply a possibility—that a false claim was presented to the government." *Id.* Eberhard's complaint fails to bridge the gap between the alleged false scheme and the submission of false claims for payment, as required to allege an FCA violation. *See Bledsoe*, 501 F.3d at 504–05; *Sanderson*, 447 F.3d at 877. Instead, Eberhard asks that we assume, on the basis of speculation, "that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted" to the government. *Sanderson*, 447 F.3d at 877 (internal quotation marks omitted); *Marlar*, 525 F.3d at 446. Rule 9(b) does not permit such speculation. *See Chesbrough*, 655 F.3d at 472; *Sanderson*, 447 F.3d at 878.

Again, we "leave open" the possibility that Rule 9(b)'s requirements may be relaxed in situations in which the plaintiff "has pled facts which support a strong inference that a claim was submitted," either on the basis of "personal knowledge" or otherwise. *See Chesbrough*, 655 F.3d at 470–71. We agree with the district court, however, that Eberhard has not raised a sufficiently strong inference here. Accordingly, the district court did not err in dismissing Eberhard's complaint.[3]

## C. The District Court Did Not Abuse Its Discretion in Denying Eberhard's Discovery Request

Eberhard also argues that the district court abused its discretion in denying his Motion to Authorize Discovery. We disagree. Eberhard's motion requested the production of documents, interrogatories,

---

**3.** Eberhard also contends that, "to the extent that the [amended complaint] appears to assert a claim under the Anti–Kickback Statute," as opposed to the FCA, Eberhard "should be permitted to amend" his complaint in order to clarify his FCA allegation. Appellant Br. at 15. As discussed above, Eberhard's complaint was properly dismissed because it failed to state a false claim with particularity, not because it appeared to state a claim under the AKS as opposed to the FCA. Accordingly, his request for amendment cannot assist his claim. The district court did not err in denying Eberhard's request to amend.

554

and one deposition. *See* R. 20 (Mot. to Authorize Disc. at 2) (Page ID # 89). In denying this request, the district court quoted cases from this Circuit noting that "[t]he very purpose of [Rule] 12(b)(6) is to enable defendants to challenge the legal sufficiency of the complaint without subjecting themselves to discovery." R. 29 (Dist. Ct. Op. at 7) (Page ID # 234) (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir.2003)). Moreover, the district court recognized that the purpose of Rule 9(b)'s heightened pleading standard is to prevent "fishing expeditions." *See id.* (quoting *Bledsoe*, 501 F.3d at 510).

Eberhard requests "[a] copy of all documents submitted to the United States for payment under Medicare that were generated as a result of the efforts of a 1099 representative since the formation of PCLS where the 1099 representative was paid a commission" and "[a]ll documentation as to all payments to 1099 representatives as a result of the receipt of payments from the United States for Medicare bills since the formation of PCLS." R. 20–2 (Req. for Doc. Produc. at 2) (Page ID # 107). This broad request does not include "temporal or geographical limitations." *See* R. 29 (Dist. Ct. Op. at 7) (Page ID # 234). The district court did not abuse its discretion in finding that Eberhard's request for documents here defeated the purpose of Rules 9(b) and 12(b)(6), nor did it abuse its discretion in denying Eberhard's discovery request.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.