NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0275n.06

Case No. 20-2128

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jun 04, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF MICHIGAN, ex rel., | ) ) ) | |
| Plaintiffs-Relators, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| ASHWANI SHEORAN, RPh, | ) ) | |
| Plaintiff-Relator/Appellant, | ) ) | |
| v. | ) ) ) | |
| WAL-MART STORES EAST, LP, TOI WALKER; DOUG HENGER; ALFRED RODRIGUEZ; RICHARD LOCKARD, M.D., | ) ) ) ) | **O P I N I O N** |
| Defendants-Appellees. | ) ) | |

**BEFORE: CLAY, McKEAGUE, and LARSEN, Circuit Judges.**

**McKEAGUE, Circuit Judge.** In 2013, Ashwani Sheoran filed a sealed complaint under the False Claims Act and the Michigan Medicaid False Claims Act alleging that a doctor was writing improper prescriptions for high dosages of opiates and that Walmart was filling those prescriptions. After five years, the United States and State of Michigan declined to intervene and prosecute the case on Sheoran's behalf, and the district court unsealed the complaint. The district court granted the defendants' motions to dismiss and denied Sheoran's motion for reconsideration. Sheoran challenges the district court's grant of the motions to dismiss, its alleged failure to address

claims under the Michigan Medicaid False Claims Act, and its decision not to hold oral argument for the motions.

We find Sheoran's arguments to be without merit and **AFFIRM** the judgment of the district court.

# I

In April 2012, Sheoran began working as a full-time floater pharmacist for Walmart in Michigan, which meant that he would work at different pharmacies around the state. In July 2012, Sheoran arrived to work at a Walmart in Bad Axe, Michigan and observed a line of roughly ten customers waiting for the pharmacy to open, all of whom were patients of Dr. Richard Lockard. Sheoran claims that they all presented prescriptions for very high doses of opiates, so high that one patient would have died had he or she "actually taken" the prescription.

Then, in August 2012, while working at the same Walmart, Sheoran claims he received large numbers of opiate prescriptions from Dr. Lockard's office and declined to fill them due to their high doses. Sometime afterwards, Sheoran obtained one unidentified patient's "Medical Expenses Summary," which listed that patient's prescriptions and costs over a five-year period. Sheoran concluded that because the cost to the patient was $1-2 for many of the prescriptions, they must have been submitted to Medicare or Medicaid for payment, which would potentially trigger liability under the False Claims Act. Claiming that this Medical Expenses Summary was one example of thousands, he brought his concerns to his supervisor. Walmart investigated and found that the pharmacy was not following Walmart's internal procedures for filling faxed prescriptions but did not conclude that any laws or regulations were violated. After a meeting where Sheoran was reprimanded for stealing the Medical Expenses Summary (later attached to his complaint) in violation of Walmart's policies, he was fired on January 21, 2013.

On February 11, 2013, about a month after he was terminated, Sheoran filed a complaint under seal alleging False Claims Act ("FCA") violations against Walmart, three individual employees of Walmart, and three doctors. After amending his complaint, Sheoran alleged (1) presentation of false claims under the FCA and Michigan Medicaid False Claims Act ("MMFCA"); (2) use of false records under the FCA and MMFCA; (3) conspiracy to violate the FCA; and (4) retaliation under the FCA by Walmart. After five years, the United States and State of Michigan declined to intervene in the case, so the district court unsealed the complaint on March 7, 2018. The Walmart defendants and one of the doctors, Dr. Lockard, moved to dismiss, and the district court granted their motions on August 20, 2019. Sheoran moved for reconsideration, which the district court denied on September 28, 2020. This appeal followed.

## II

Sheoran challenges the decisions below in three ways. The bulk of his briefing focuses on whether the district court was incorrect in granting the motions to dismiss. He also argues that that the district court erred by failing to include his MMFCA claims in its summary of claims in the orders and that the district court abused its discretion by waiving oral argument on the motions. We address each argument in turn.[1]

---

[1] Sheoran's statement of issues does not address whether the district court correctly granted the motions to dismiss, and instead addresses only his MMFCA and oral argument claims. Therefore, we could restrict our analysis to those two claims alone because Federal Rule of Appellate Procedure 28(a)(5) specifies that "[t]he appellant's brief *must* contain" the issues presented in the statement of issues; therefore, issues not included may be dismissed as forfeited. *See United States v. Calvetti*, 836 F.3d 654, 664 (6th Cir. 2016). Nonetheless, given its importance on appeal, we will address whether the district court correctly granted the motions to dismiss. To the extent that Sheoran's briefing raises other arguments, many of which are undeveloped and presented in only a paragraph or two, we deem them forfeited because of Sheoran's perfunctory treatment of them and because they were not included in Sheoran's statement of issues. *See id.*; *United States v. Johnson*, 430 F.3d 383, 397 (6th Cir. 2005); *United States v. Burton*, 828 F. App'x 290, 293 n.1 (6th Cir. 2020); *Barrett v. Detroit Heading, LLC*, 311 F. App'x 779, 796 (6th Cir. 2009).

A. *Dismissal for failure to state a claim*

We review a district court's dismissal for failure to state a claim de novo. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003). To survive a motion to dismiss, a complaint must contain more than "labels and conclusions," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and we may reject "mere assertions and unsupported or unsupportable conclusions." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006). Complaints brought under the FCA require plaintiffs to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). *Yuhasz*, 341 F.3d at 563. This heightened standard requires that the plaintiff "allege the time, place, and content of the alleged misrepresentation . . . [;] the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993)).

1. <u>False claims and false records</u>

Sheoran's first two counts allege that the defendants knowingly presented false claims to the government and knowingly made false records for use in those claims. To establish a claim under the FCA, a plaintiff must allege that (i) the defendant presented a claim of payment to the government, (ii) the claim was false or fraudulent, (iii) the defendant knew it was false or fraudulent, and (iv) the false claim was material to the government's payment. *See United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 408 (6th Cir. 2016). Sheoran's complaint falls short on all four elements.

a. *Presentment*

A critical component of an FCA complaint is the allegation that a claim for payment was presented to a government entity. *See Sanderson*, 447 F.3d at 878 (describing presentment as the

"*sine qua non* of a False Claims Act violation"). Under Rule 9(b), specifics on presentment are required, such as the types of employees involved and the "specific dates" underlying the claims. *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 515 (6th Cir. 2007); *Sanderson*, 447 F.3d at 877–78.

Sheoran claims that Exhibit A of the complaint, the Medical Expenses Summary, establishes presentment, but that exhibit is simply a summary of one unidentified patient's prescriptions and expenses. Nothing about the document indicates that any of the entries were presented to a government agency. Sheoran argues that because some of the payments were for $1-2, the patient must have received government reimbursement through Medicare or Medicaid. But Rule 9(b) requires far more than mere speculation. *See Sanderson*, 447 F.3d at 877 (noting that plaintiffs cannot simply allege that claims "must have been submitted, were likely submitted, or should have been submitted to the Government") (quoting *United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.,* 290 F.3d 1301, 1311 (11th Cir. 2002)). As the district court noted, many reasons could exist for the low costs to the patient, such as subsidizing by private insurance companies. Because this bare-bones assertion must be rejected, Sheoran cannot satisfy the presentment element of his FCA claims.

b. *Falsity*

The second element of an FCA claim is that the claim submitted must be "false or fraudulent." 31 U.S.C. § 3729(a)(1)(A), (B). Again, Sheoran relies solely on Exhibit A to satisfy this element, claiming that the "high doses" listed "would kill the person" if taken as prescribed. But we must reject mere "conclusions" and "naked assertions" in a complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Exhibit A simply lists one patient's prescriptions and expenses and contains no other medical information, and Sheoran offers none in his complaint. It is

impossible to evaluate whether the doses were too high without more information regarding the patient's medical history or needs. Therefore, there is no way to conclude that Exhibit A establishes falsity.

c. *Knowledge*

Next, Sheoran must sufficiently allege that the defendants "knowingly" presented false claims or "knowingly" created false records for false claims. 31 U.S.C. § 3729(a)(1)(A), (B); *see id.* § 3729(b)(1). This is a high bar, requiring "that a defendant knows of, or 'acts in deliberate ignorance' or 'reckless disregard' of, the fact that he is involved in conduct that violates a legal obligation to the United States." *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 437 (6th Cir. 2016) (quoting 31 U.S.C. § 3729(b)). Once again, even assuming that the prescriptions in Exhibit A were submitted to the government, nothing in those prescriptions would indicate to Walmart that they were illegal, false, or fraudulent. Sheoran's complaint does not describe how Walmart could have concluded the prescriptions were false or fraudulent in some way, so he fails to satisfy this element.

d. *Materiality*

Finally, Sheoran must show that the alleged misrepresentation made to the government was "material" to the government's decision to reimburse the claim. *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2001 (2016). This "demanding" standard should go "to the very essence of the bargain," as the FCA was not enacted to punish "garden-variety" violations. *Id.* at 2001–03 & n.5. Assuming that Walmart actually submitted the claims in Exhibit A to the government, the government would have had access to the same knowledge that Walmart had regarding the allegedly "high doses" of controlled substances prescribed. Even if we accept as true Sheoran's representation that the prescriptions in Exhibit A were submitted to the government

and that the exhibit, on its face, shows false or fraudulent claims, then the government's decision to pay those claims despite that knowledge "is very strong evidence that those requirements are not material." *Id.* at 2003. Therefore, Sheoran fails to satisfy this element.

## 2. Conspiracy

Sheoran's third count of FCA conspiracy against Walmart falls with the two preceding substantive claims. Conspiracy under the FCA is derivative of the substantive claims of submitting a false claim to the government or creating a false record. *See* 31 U.S.C. § 3729(a)(1)(C); *United States ex rel. Crockett v. Complete Fitness Rehab., Inc.*, 721 F. App'x 451, 459 (6th Cir. 2018). As we have concluded in the preceding section, Sheoran's first two counts failed to meet the pleading standards of Rules 12(b)(6) and 9(b), which means his conspiracy claim fails as well. *See Crockett*, 721 F. App'x at 459 (holding that the plaintiff's "inability to show that false claims were actually submitted to the government means that her . . . false-claims-conspiracy counts are likewise subject to dismissal, because the existence of such false claims is a precondition to [this] theory").

## 3. Retaliation

Finally, the district court correctly dismissed Sheoran's retaliation claim. FCA retaliation claims are not subject to Rule 9(b)'s heightened standards, *see id.* at 460, but "a plaintiff must show: (1) he engaged in a protected activity; (2) his employer knew that he engaged in the protected activity; and (3) his employer discharged or otherwise discriminated against the employee as a result of the protected activity." *Yuhasz*, 341 F.3d at 566. Sheoran's retaliation claim fails because he failed to plead that Walmart knew he was pursuing an FCA action. Employees "must make clear their intentions of bringing or assisting in an FCA action" to show retaliation. *Id.* at 568. Sheoran claims that he told his superiors about the allegedly false

prescriptions, but that is not enough. Even when an employee tells their employer that they have witnessed illegal conduct and that other companies have incurred FCA liability for similar conduct, that fails to establish that an employee is pursuing an FCA action. *Id.* at 567; *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 518 (6th Cir. 2000) (noting that telling an employer about their alleged regulatory violations was not sufficient to satisfy this requirement). Therefore, Sheoran's retaliation claim was properly dismissed.

B.  *Michigan Medicaid False Claims Act*

Next, Sheoran claims that the district court erred by failing to address his MMFCA claims when it summarized Sheoran's claims in its order. But first, contrary to Sheoran's assertions on appeal, two of the four claims in his complaint were not brought under the MMFCA at all. Sheoran's conspiracy and retaliation claims referenced only federal FCA provisions. There can be no error in the district court's failure to discuss claims that did not exist.

Second, the district court addressed the other two claims, recognizing that Sheoran brought them under "the Michigan Medicaid False Claims Act" as well as the federal FCA. The district court's analysis applied to both sets of claims, and it dismissed the state law claims along with the federal ones.

To the extent Sheoran argues that the MMFCA claims should have been analyzed differently than the federal FCA claims, that argument is contradicted by both the proceedings below as well as precedent. Neither the complaint nor the motion to dismiss briefing identified any distinctions between the FCA and MMFCA in this case. And that makes sense, because the FCA and MMFCA are identical in every relevant respect here and are frequently analyzed in tandem. *See, e.g.*, *Hendricks v. Bronson Methodist Hosp., Inc.*, No. 1:13–CV–294, 2014 WL 3752917, at *2–7 (W.D. Mich. July 30, 2014) (analyzing FCA and MMFCA claims together). The

federal FCA prohibits "knowingly present[ing]" a "false or fraudulent claim" as well as "knowingly mak[ing]" a "false record" "material" to such a claim, 31 U.S.C. § 3729(a)(1), and the MMFCA contains two substantially similar provisions, *see* Mich. Comp. Laws § 400.607(1), (2); *Hendricks*, 2014 WL 3752917, at *2. Therefore, there was no error in the district court analyzing both sets of claims the same way.

C. *Oral argument*

Sheoran suggests that the district court issued "confusing" orders, dismissed his claims "without a hearing or clear understanding of the factual and legal issues," and thereby erred in waiving oral argument for the motions. We review whether a district court impermissibly decided a motion without oral argument for an abuse of discretion. *Mann v. Conlin*, 22 F.3d 100, 103 (6th Cir. 1994).

We see no abuse of discretion here. The Federal Rules of Civil Procedure and the district court's local rules expressly permit deciding motions without oral argument. Fed. R. Civ. P. 78(b); E.D. Mich. Loc. R. 7.1(f). And doing so serves many valuable functions for the judiciary, such as allowing district courts to "effectively manage very crowded case dockets," especially in instances where "the legal issues are abundantly clear and . . . firmly settled." *Yamaha Corp of Am. v. Stonecipher's Baldwin Pianos & Organs, Inc.*, 975 F.2d 300, 301 n.1 (6th Cir. 1992). Deciding motions on the briefs also "encourages improved brief writing" and "forces the parties to thoroughly research the legal basis on which their positions rest." *Id.* We routinely approve of a district court's decision to decide motions without oral argument and see no reason to reject the court's decision to do so here.

In response, Sheoran claims the orders were "very confusing" and that the district court failed to "understand the complex issues in this case." But as the analysis above demonstrates,

this was a straightforward FCA case that was properly decided on the briefs. And the specific claims that Sheoran makes regarding the district court's allegedly "confusing" analysis do not show an abuse of discretion. For example, Sheoran claims that the district court failed to note that FCA liability can be established if claims are submitted "to certain third parties acting on the Government's behalf" and not just to the government itself. Sheoran's statement of the law is accurate, *see Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1510 (2010), but irrelevant. Sheoran did not claim that the payments were submitted to third parties, so the district court had no reason to discuss that aspect of the law. Later, Sheoran claims that the district court's use of the phrase "appears to allege" was an "admission" that confirmed "the district court was not confident" about what Sheoran's complaint was alleging and that oral argument was necessary "to clear up the court's confusion." We reject Sheoran's invitation to parse the words of the district court so finely or conclude that the district court was confused based on its use of that phrase. In sum, Sheoran's arguments have no merit and fail to show an abuse of discretion in the district court's decision to decide the motions without oral argument.

**III**

We **AFFIRM** the judgment of the district court.